Good morning, Your Honors. May it please the Court, Shelby Lemeliffe, Masters Law Group, on behalf of K.C. Taylor. I'd like to reserve four minutes for rebuttal and also advise the Court that I'll be yielding three minutes of my time to Mr. Ramshaw, who will speak on behalf of the EEOC. And with that, let me jump right in, right to the heart of the matter, which is that morbid obesity is an impairment under the Washington law against discrimination. And to start with, I'd like to remind the Court of a statement often used by Washington courts addressing this issue, and that is... Could you pull the mic a little closer? Can you hear me now better, Your Honor? Thank you. Yes. Thank you. And that statement commonly used in Washington in addressing these cases is that it is seldom appropriate to do exactly what the district court did here, which is to say that it is seldom appropriate to grant summary judgment to an employer in a Washington law against discrimination case. And that is because employees in these cases already face exceptionally difficult burdens. Well, he looked at it as a legal conclusion. It was a legal matter. So in summary judgment... But the question, the legal question, and this is exactly why Washington amended its statute in 2007 and why Congress did a year later, which is the fight is not supposed to be fought in what a disability is. The fight is supposed to be fought in court on whether discrimination has occurred. And that is exceptionally important to this court's analysis of what Washington would do here. But didn't the district court say that as a matter of law, there can be no discrimination under Washington law on the basis of obesity? What the court said is that obesity cannot be an impairment under Washington law. Or an impairment. Right. Right. We can't have discrimination. Yeah. And that's wrong under the WALAD for a number of reasons. So the district court did it as a matter of law. So why is that district court wrong? For a number of reasons. And first, turning to the legislative history in Washington, which says that the WALAD extends greater and independent protection to plaintiffs than the ADA. The whole point of the definitions of impairment and disability in the WALAD are to capture people who were not being captured by the ADA. And this is in the legislative history that we provided the court last week. Washington had much the reaction that Congress had a year later when it amended the ADA for this very same reason. And the reason is that plaintiffs, as I said, were being kept out of court because they were being forced to debate whether a disability exists. I think you're talking a little fast for me. So I would suggest slow down. If you need a little more time, we'll add it for either party. Okay. Thank you. So the point is, is that Washington added the definition of impairment that is at issue today for the purpose of capturing plaintiffs who were being locked out of federal court. And this is expressed in the legislative history. The specific concern was that federal courts were being far too exacting on what a condition is. And Washington raised this both in the House and the Senate in adopting the definitions of impairment and disability in the Washington law against discrimination. The purpose is to provide independent relief and to provide relief that captures conditions that were not being captured by federal courts under the ADA. And this is relevant and, of course, seen in Washington case law as well. Now, the reason we asked this court to certify to the Washington Supreme Court is because there isn't a Washington case that has addressed this precise question of whether morbid obesity is a disability. But the cases that have addressed conditions under the Washington law against discrimination treat the term very broadly. The first case, of course, is CLPSI, which is completely unconcerned with the cause of the condition at issue in that case. In fact, the court states that the plaintiff did not even outline or state the disability that he was alleging in the perceived as disability claim. Whether it was enough to move forward that upon learning that the plaintiff used methadone, the employer stated that he needed to get clean or could relapse. That alone was sufficient to allow the plaintiff to proceed to trial under the Washington law against discrimination. CLPSI is entirely unconcerned with the cause of that condition, whether it's physiological or whether it's caused by something else. Counsel, could I ask you a question on your certification issue? Normally, we interpret state laws on the same subject as a federal law in accord with the federal precedent. So I would have thought that we would interpret the WLAD in accord with the federal ADA precedents. But is there something different here because of the word impairment? Why is it that we need a state Supreme Court decision rather than just looking at the federal precedents under ADA? There's a couple of reasons, and one is as much as our court certainly looks to federal decisions for guidance, it's not binding. And this is a very important decision for Washington, and it would be very beneficial for Washington to have a binding decision. Now, the reason that Washington would depart from the federal case law here is because of the very reasons that the WLAD was amended in 2007 to add these definitions. It was a rejection of the way federal courts were treating the definition of disability, much the way Congress rejected that same approach in 2008. Now, the federal courts, at least in the Eighth Circuit, have nonetheless completely end-run Congress's authority in 2008 by continuing to apply the exact same standard for construing disability that they applied before. That is an end-run. When Congress says to the courts, there's nothing wrong with the definition of impairment. What's wrong is the way that you are using the definition of impairment to keep people out of court. It is an end-run to say, nonetheless, we can continue doing exactly the same thing. And I believe that Washington would reject that for the same reason it amended the WLAD and is seen as the legislative history amended it because it did reject exactly that approach. Now, I think here, however, the district court has gone even a step further. And it doesn't just require a correlation between physiological and condition. It requires a causal connection. At excerpts of the Record 19 and throughout its decision, the court says that what is required is that my client proved that his physiology caused the condition of morbid obesity. That is an impossible standard. And I think an analogy demonstrates how dangerous that standard is. And I'd ask the court to indulge me for a moment and imagine what would happen if a WLAD plaintiff was being kept out of court on summary judgment when her claim was that her perceived as disability was cancer. And she was told that she had to prove not only that her condition was caused physiologically, but that her employer perceived the physiological cause of her condition, which is to say that her employer perceived something like a genetic mutation such as BRCA1, not environmental causes. That plaintiff would not be held to that standard. And that is exactly the standard that the district court held my client to, that he not only had to show some sort of connection, but a cause. And this is a fault-based standard that finds no basis in the WLAD whatsoever and goes far beyond any plain language reading of the statute. Further, I think the Washington statute itself does suggest that condition is a stand-alone provision. And that is because there is a comma that separates physiological disorder and condition. Now, the only plain language reading of that statute is condition is a stand-alone term. And that, of course, supplements the analysis that reading condition as a broad stand-alone term is consistent with legislative intent and consistent with common law in Washington. Now, I've explained, I think, the dangerousness of the court's decision requiring a causal connection. I would say, however, that if the court remains convinced that there has to be a physiological connection or component, that a condition isn't a stand-alone term, that obesity quite plainly has a physiological component. And the easiest way to see that connection is in Burlington Northern's answer to Clipsey at page 25 of their brief. Burlington Northern, faced with a case in Washington that plainly is unconcerned about the cause of the condition, says the underlying condition is addiction and addiction is physiological. They are willing to make the assumption that addiction is physiological. Well, the same assumption would have to be made for morbid obesity. Physiological is simply something that is a product of our biological structure or related to our biological structure. Morbid obesity being the component of weight divided by height is quite obviously related to one's biology. And that's all that should have been required here. Thank you. Before you sit down, I know you're going to cede some time to the EEOC, but I want to ask you a question about that for just a second. So we, as a federal court, we have the authority. We can interpret state law, correct? Of course. And, you know, our task is to look to see what the Washington Supreme Court would do. Right. And so we know that they look at federal law in interpreting WALAD. And here there's been a lot of debate about what the ADA means in this context, and the EEOC has submitted an amicus brief regarding their guidance and manuals interpreting the relevant regulations under the ADA. And if we were to agree with them in their own interpretation, doesn't that help? Wouldn't that assist you in this regard? Well, certainly. I think if the causation falls out and the analysis is that there's got to be some sort of physiological connection under the ADA, and I think that's probably true under the ADA, although I would fight against that in Washington. We are absolutely fine with a standard that says we think there's got to be a connection, so long as that is plain here. And it's plain for the same reason it was plain to BNSF in addiction. Morbid obesity is plainly related to one's physiology. In other words, you agree with the EEOC's position? I agree with their position as it relates to the ADA. I don't think they're taking a position on the WALAD. To the ADA. Yes. Yes, absolutely. Thank you. Okay. Good morning. I'm Paul Ramshaw for the EEOC as amicus curiae. And I want to talk about, if I have time, two sentences. First, the sentence about physical characteristics from our interpretive guidance. The railroad suggests that it may not be proper to look at sentence structure and guidance if it's not in the statute. That's mind-boggling to me. I think whenever you're reading an English sentence, you should pay attention to the sentence structure and the grammar. So the sentence says, a physical characteristic, the category of physical characteristics does not include, I'm sorry, the category of impairment does not include physical characteristics that are within normal limits and are not caused by a physiological disorder. That sentence does not tell us what an impairment is when a physical characteristic is an impairment. It just tells us, in certain circumstances, physical characteristics are not impairments. And what are those circumstances? It's physical characteristics that are within normal limits and are not caused by a physiological disorder. Those physical characteristics are not impairments. That's all the sentence says. The sentence does not say an impairment has to be caused by a physiological disorder. I'm sorry, that a characteristic has to be caused by a physiological disorder in order to be an impairment. If just, let me take a simple example of that grammar where we don't care so much about the result. If someone's writing a book about sports for an alien and trying to talk about what is a ball, and they say the category of ball does not include things that are made of rubber but are not spherical in shape. Okay? That doesn't tell us what a ball is. All it tells us is if you have something that's made out of rubber and it's not spherical, it's not a ball. That's what this sentence does. If you have a physical characteristic that is within normal range and it's not caused by a physiological disorder, then that's not an impairment. The other sentence I want to talk about briefly is the one in our compliance manual, a number of the courts talking about obesity have quoted and relied on, that says that severe obesity, which has been defined as body weight more than 100% over the norm, is clearly an impairment. Now, a number of courts have read that sentence to mean that obesity is an impairment only when it is 100% over the norm. That's not what the sentence means. That's not how we use the word clearly. For example, consider the sentence, persons with IQs over 190 are clearly geniuses. That doesn't mean that a person with an IQ below 190 might also be a genius. It just means there's a range, and we're not sure where to draw the line, but we do know that anyone above this part of the line is a genius, and we're not sure where to draw the line before it. If you have no questions? Well, let me ask you, so where did the Eighth Circuit go wrong? The Eighth Circuit interpreted that the first sentence that I talked about incorrectly, as have a number of other courts. They said that sentence means that a physical characteristic is not like weight, is not an impairment unless it was caused by a physiological disorder. That's not what the sentence says, and that's what the district court here said too, and I would argue if you understand that sentence properly, you should vacate that part of the district court order. He just misunderstood what that sentence means. How much deference do we owe to your interpretation? Well, I'm not sure you owe any deference. I'm not asking for deference. I'm just trying to discuss the grammar of the sentence and what the sentence means. You may agree with me. You may not. The Circuit didn't agree with you. That's right. No, a number of courts have disagreed with me, but I've tried to suggest why I think that sentence should not be interpreted that way. Okay. Of course, we're not bound by the Eighth Circuit. Right. We do read what our sister circuits have to say. Right, and you're working on a State law claim here, but to the extent that you rely on the ADA materials, I wanted to talk about what those sentences mean. Thank you very much. That's very helpful. Thank you. Okay, Mr. Neal, please proceed. Good morning, and may it please the Court. Brian Neal for BNSF. The district court correctly granted summary judgment to BNSF in this case. I'll start with the obesity issue, and if there's time I'll address the knee and the back issue at the end of the argument. On the obesity question, there are two overarching questions that the Court must answer, and the first one is whether you agree with the district court and with BNSF that in the 2007 amendments to the Washington statute, the Washington legislature incorporated federal law as to the meaning of impairment. Now, I emphasize as to the meaning of impairment because we don't disagree. It's very obvious that the Washington legislature intended to override what the Washington Supreme Court had done with respect to incorporating federal law as to substantial limitation, and you'll all recall that under the old ADA, before the ADA amendments, you had to show an impairment that was substantially limiting or regarded as substantially limiting. So you had impairment and substantially limiting. And the Washington Supreme Court had incorporated, when faced with what at the time was very open-ended and vague language in the Washington statute, this whole substantial limitation aspect of federal law, and the legislature clearly rejected that. There's no doubt. And, frankly, did the same thing that Congress ended up doing a year later when it adopted the ADA Amendments Act. What the legislature also did, though, was for the very first time incorporate and introduce to the statute the term impairment. That hadn't been there before. And when they introduced that term, they made the statute line up with the ADA, except for the substantial limitation component. So you have to have an actual impairment, a record of an impairment, or a regarded as impairment. And this case is about the latter of those. And, most importantly, when they introduced that impairment component, they adopted wholesale verbatim, well, almost verbatim, the existing EEOC regulation that was just talked about into the Washington statute. And that doesn't happen by accident. When a legislature adopts a federal regulation nearly verbatim, that's not an accident. The legislature necessarily knew what it was doing and necessarily, or at least presumptively, was incorporating the body of federal law that came along with that definition of impairment. So it's a fair and reasonable eerie guess for this court to make that the Washington legislature knew what it was doing and it incorporated federal law as to the impairment term, which is not to say anything about its desire to override the Supreme Court's decision on the substantial limitation point, which was what had resulted in a large number of cases being thrown out under the ADA and what the legislature was concerned about happening under the Washington statute. So the court, as the first point, correctly looked to federal law. Moving on to federal law, which is the second issue you'll need to look at, the court, of course, is familiar with the Morris decision. You've read the briefs. You've read the decision. As Justice Paez pointed out, you're not bound by the Morris decision, but you know we're asking that you look at it and view it as well-reasoned and correct and adopt that reasoning for yourself. So why shouldn't we certify this question to the Washington Supreme Court? They're pretty good about taking certification matters. For a number of reasons. And, of course, we've gone into a lot of detail about that in the motion discussion. I want to make sure I understand your position. Even though they do look at federal law, they may want to look at the statute more holistic to further the purposes that the Washington legislature wants to accomplish. Maybe more generous than the federal statute. Well, we're here on diversity jurisdiction, and obviously federal courts hear diversity cases, and you don't certify every diversity question, even one that's not settled. So you have to draw the line somewhere. That seems like an important question for the Washington Supreme Court. Well, and federal courts do decide important questions, including a lot of questions. Let me ask you, did the Washington Supreme Court address the meaning of impairment after the change in the law? No, I don't believe so. But for the reasons I was talking about earlier, I think it is clear that the Washington legislature adopted the meaning of impairment. Now, another point we make in our brief. You would agree with me that any decision we make here is not binding on the Washington courts. That's right. That's right. It's only binding on Federal district courts. That's right. And within the circuit, of course. Right. The BNSF brought this case to Federal court. We have a right to be in Federal court. We have a right to your determination. And, yes, there is a certification procedure, but it also could have been invoked much earlier in the case, and we've cited some cases in our response to the motion. The district court, in not all States can the district court certify, but in Washington they can. That's right. And we cited cases from your court. And he, the district judge here for some reason decided not to do that. Because he was never asked. And we've cited cases from your court saying that if the party has the opportunity to ask and never asks, this court should look very unfavorably upon being asked for the first time on appeal because it essentially allows. I thought it was interesting when the issue was certified to the Montana Supreme Court, they took a different position than the Eighth Circuit did. Well, the Eighth Circuit ended up later saying that the Montana Supreme Court got it wrong as a matter of Federal law. Now, even the position the Montana Supreme Court adopted, which you saw ended up coming back to this court and being decided in BNSF's favor because of the meaning of the compliance manual that EOC's counsel was talking about, that ended up being decided in BNSF's favor because the standard in the compliance manual is such a high standard. It's a very, very limited exception that EOC has recognized. But essentially the Montana Supreme Court just made a mistake and thought that the compliance manual had been amended after the ADA Amendments Act and that just hadn't been the case. That was just an incorrect assumption on its part. And I would assume that the Washington court probably wouldn't make that same mistake if that were pointed out to them ahead of time. So getting back to the Federal law issue here, of course we're asking that you follow Morris, but it's not just Morris. It's the Eighth Circuit, the Sixth Circuit, and the Second Circuit, along with numerous, I'd say maybe even scores of district court decisions that have taken the very same approach that those circuits have taken, both before and after the ADA Amendments. They've all looked at the EEOC regulation and the EEOC guidance. Obesity can only be an impairment when it's physiologically based. When there's an underlying disorder that leads to the, where it's a symptom of an underlying disorder. And the reason is that weight is a characteristic. And when we talk about obesity, we're just talking about weight at a certain level. Weight is a characteristic, just like height, just like hair color. And when weight exceeds a certain level, there are certain labels that are put on it depending on what the level is. Oh, there's obesity, and there's different levels of obesity, and they've changed over the years. But because weight is a characteristic, that's why you have to show an underlying physiological disorder, because it is clear that characteristics are not impairments. And that's why the causation issue that the opposing counsel was talking about with respect to cancer is not an issue. Cancer is obviously an impairment. You don't have to show what caused the cancer. You don't say you have cancer because you smoked, therefore you're not protected. Because cancer is an impairment. What we're talking about now is determining whether something is an impairment. And because the guidance is clear that weight is not an impairment, that's why you have to show the underlying disorder that has led to the excessive weight that's at issue. Now, I don't want to go in and just repeat the reasoning. You've read the reasoning in the Morris case. But you understand that we're certainly not, I don't think, out on a limb in asking that you follow that, because it's not just one circuit court decision out there. It's a number of circuit court decisions. What do we do with the fact that the EOC's in here urging us to follow their interpretation? They're entitled to some consideration, aren't they? Well, I think the EOC's counsel just said they weren't entitled to any deference, and I would agree with that. Why not? Well, part of the reason is because they keep- They didn't just make up this position here in their brief. This is a position that they've articulated before. And it's been consistently rejected before as well. The Eighth Circuit rejected it, but before that, the Sixth Circuit rejected it. And in both of those cases, the EOC appeared and argued. They filed the Sixth Circuit case, and the courts have rejected it. From a technical matter, our deference doesn't apply to an agency's interpretation in an amicus brief of its interpretive guidance. It applies to an interpretation of a regulation. And we're arguing about the interpretation of the guidance. And we are deferring to EEOC's interpretation. We're deferring to their interpretation that's in the interpretive guidance. We're just disagreeing with the litigation unit coming in and- Well, isn't the guidance interpretive regulation? Well, that's right. But it's the our deference squared issue that's talked about in the Fifth Circuit case that we cite in our brief. It allows the adoption of a regulation that's followed by guidance, that's followed by an amicus brief. It leaves it too open for agency manipulation about the meaning. And the other problem is when you've got this situation where they keep making the same argument and courts keep rejecting it, and on top of that, the policymaking unit of EEOC in 2011 completely rewrote the regulations because of the 2008 Amendments Act. And yet they reissued the very same wording on the interpretive guidance as to impairment. And they knew from the Watkins case and all of the other cases, but specifically Watkins because EEOC was a party, that this was how federal courts were interpreting that guidance. So surely you would think that if the policymaking unit of EEOC really thought there was an issue there, they would have either changed the language or if they felt like they don't need to change the language because the courts are just wrong in interpreting it, they would have at least added a sentence that said that. And not only did they not do that, they added language saying that expressly that Congress intended no change in the meaning of impairment. So they doubled down on the very meaning that courts had adopted. And getting back to the Washington legislature, when Washington incorporated that impairment definition, they incorporated that meaning along with it because by the time 2007 came around, that meaning was pretty well established under the ADA. And that's another reason not to certify it because you don't certify when the answer is pretty clear. And here the answer is pretty clear. Now, let me just talk briefly about the facts. I think that this really is a legal dispute. There really wasn't much of a fight put up below as to the facts, but there was no evidence that Mr. Taylor was perceived to have any underlying condition that resulted in his obesity. I thought there was some dispute about whether or not the offer was withdrawn or whether he just kind of. There was some different statements about whether it was technically withdrawn or not, but that's not a material issue on what we're talking about here because the effect was he didn't get a job. And that wasn't the basis for the judge's ruling. And so whether it was withdrawn or whether it was just not acted upon, he didn't get the job. But otherwise the fact is pretty much a non-dispute. That's right. The information was requested about that condition. That does not convey a perception of a currently existing impairment. And on the knee and the back issue, you have the same problem. That was really almost a throwaway, I think, was what the judge had referred to. Am I correct in understanding that the only way he could have qualified for this job was to meet the medical? There was a letter that was sent to him saying you can lose 10 percent of your weight. There was a test that they wanted him to take, a couple of tests they wanted him to take, and if they all come back positive, then he might be considered for a job. Is that right? Except for if they all come back positive. Well, they wanted to see the results. That's right. That's right. The issue is not with BNSF hiring people who happen to have a condition that is one of those that's associated with higher BMIs. The issue is hiring someone without knowing that the person has that condition because those conditions can strike with you can have an event of sudden incapacitation when you've got a person out there walking around and working in a very unforgiving railroad environment with lots of large moving equipment and lots of people depending upon one another to be safe. It was a sleep apnea test? That's what they were worried about? That's one of the conditions that the doctor mentioned as being highly prevalent or associated with high BMIs. That's right. What were the others? I'm sorry? What were the others? I believe that in the deposition he mentioned specifically diabetes and then generally referred to conditions that result in sudden incapacitation. So what they asked for was him to get a series of medical tests? There were I think three or four listed that would have related to those two primary impairments that I mentioned. And he would have had to pay for those? That's correct. All right. Or he could have lost 10% of his weight. Or that's right, he could have lost the 10% of his weight. How many pounds would that have been? I believe he weighed 257 pounds at that point, so that would have been 25.7 pounds. Yes, about that. And how long would he take to lose those? I believe it was six months. Yes, so they would have held the offer open until he had that opportunity. I'm not sure the record reflects what would have happened beyond that communication to him. And actually I'll take back my prior response. I think what the statement was was that he had to lose the weight and didn't put a time limit on it, but then he had to remain off for six months. Not that he only had six months. About a year. Yeah, depending on how long it took him to lose the weight, that's right. All right.  Thank you, counsel. Judge Fischer, to go immediately to your question, what the record reflects is that the job was gone. So it would not have mattered if my client took the weight off and kept it off for a period of six months because the job was gone. And BNSF made that very clear, because he couldn't provide the medical tests at his own expense    I only have a couple of minutes. But to go straight to the question of would Washington have adopted all of the federal cases, the answer to that question is no, and the answer to that question is no for two reasons. One, Washington Legislature of History, again, makes abundantly clear that Washington was very concerned that federal courts, using the definitions of impairment and disability under the ADA, were not capturing a number of disabled individuals to whom Washington wanted to extend protection under the Washington Law of Against Discrimination. It is absolutely absurd, in light of that legislative history, to assume that Washington would have adopted the very same federal cases that it was rejecting in its discussion of the ADA. Furthermore, the reason that BNSF has not offered this court a citation here today or in its briefing to support the assertion that the legislature in failing to expressly reject foreign non-binding authority means that it was adopting that authority is because no such citation exists. The legislature is not bound to expressly reject every single foreign case that does not bind Washington to show that it disagrees with those cases. Its disagreement with those cases is made abundantly clear in the legislative history of Washington. I'd also like to turn to the idea that weight is not a condition, rather a physical characteristic. We're not just talking about weight. We're talking about morbid obesity. BNSF calls this condition extreme, and they refer to it in the record as a health condition. Their own treatment of persons with morbid obesity proves that they perceive morbid obesity to affect the endocrine system, because they believe that morbidly obese persons are highly likely to have diabetes. It proves that they perceive morbid obesity to affect the respiratory system, because they believe persons with morbid obesity are highly likely to have sleep apnea. This is not a difficult standard for BNSF to grasp here. Washington is very broad in its treatment of condition. What Washington has said in case law already is that condition under the way lead is nothing more than a particular mode of being. Morbid obesity is a particular mode of being. It is not akin to hair color or eye color, and Washington has already made clear the broad treatment that condition receives in our state. BNSF has made a practice of excluding morbidly obese persons from their employment, and when they do it in the post-conditional offer phase, they cannot require those persons to pay for tests, and they cannot prevent the... I'm sorry? In the post-offer context, so when they've already extended an offer, where they go wrong here is in requiring my client to pay for the test, and in failing to accommodate the underlying condition if it arises. And the district court was far too exacting under the Washington Law Against Discrimination, and we'd ask this court to reverse and remand for trial. Thank you.
judges: Fisher, Gould, Paez